IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| MELVIN HALE, PhD,<br><br>    *Plaintiff*<br><br>v.<br><br>EMPORIA STATE UNIVERSITY; JACKIE VIETTI, in her capacity as Interim President of Emporia State University; DAVID CORDLE, in his capacity as Provost of Emporia State University, JUDY ANDERSON, in her capacity as Executive Director of Human Relations at Emporia State University; GWEN ALEXANDER, as Dean of the School of Library & Information Management at Emporia State University; CHRIS HOOVER, as Chief of Police at Emporia State University; DEBRA RITTGERS, as Assistant to the Dean of the School of Library and Information Management; and DOES 1 to 10,<br><br>    *Defendants*. | Case No. 15-4947-SAC-KGS |

## MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

Defendants' claim that "Hale has failed to state a claim upon which relief can be granted with respect to his one federal question claim." (Doc. 9, p.3), and that Defendants are afforded immunity from prosecution in Federal Court. (Doc. 9, p.2).

**LEGAL ARGUMENT**

**<u>THE SUFFICIENCY OF THE CLAIM</u>**

The general rule in appraising the sufficiency of a complaint for failure to state a claim is that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson* (1957), 355 U.S. 41, 45, 46, 78 S.Ct. 99, 102, 2LEd 2d 80; *Seymour v. Union News Company*, 7 Cir., 1954, 217 F.2d 168; and see U.S.C. Title 28 Rule 54c, demand for judgment: "…every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings*." U.S. v. White County Bridge Commission* (1960), 2 Fr Serv 2d 107, 275 F2d 529, 535.  All that is required is that Plaintiff must show that he could prove a set of facts that proved that he had equitable title to the relief sought.  In this case, Plaintiff can prove that Defendants defamed him, and that concurrent with the defamation that he was threatened with imminent termination, without due process.

On the selfsame day that Defendants issued false and defaming statements to the University, the public, and the press that "no hate crime had occurred," September 9th, 2015, Defendant Vietti, acting in her role as Interim President of ESU, made the following statement to Plaintiff in the presence of Kevin Johnson (ESU general counsel), Angelica Hale, and David Treviño (then-counsel of Plaintiff):

"We want to share with you a set of expectations for your continued employment with Emporia State University within SLIM from this point forward, but not without thanking you for your work to date."  The phrase "continued employment" can have only one connotation, which is a threat of termination.  This threat was concurrent with the defamation, and inextricably tied

to it. Defendant Vietti demanded that Plaintiff immediately sign that very day a document with egregious claims and admissions. Except for the timely intervention of counsel (Treviño), Defendant Vietti made it clear that Plaintiff would be terminated on the spot if he did not sign the document, which itself was evidence of coercion and oppression. Defendant Vietti relented with great resistance, but later issued the mandate referenced in the Amended Complaint as Exhibit H (Doc. 4, p.46). That document from Defendant Vietti states: "Please understand that these expectations constitute the conditions of your employment, and are nonnegotiable. Failure to meet them will result in disciplinary action up to and including termination." Defendant Vietti ties this document directly to the actions taken on September 9th, 2015.

In a follow-up statement, to the University on September 10th, Defendant Vietti exonerated Debra Rittgers, the suspect in the writing of the racial slur, and stated that "the University finds equally intolerable, in addition to the written racial slur, are multiple public messages that accuse a long-time member of Hornet Nation, Debbie Rittgers, of writing the slur." This was a clear reference to Plaintiff, because Plaintiff has publicly stated his belief that Defendant Rittgers "is the most probable author of the written slur according to forensic handwriting examiner Wendy Carlson" (Doc. 4, p.5). The phrase "equally intolerable" is public notice that Plaintiff would be disciplined, while Defendant Rittgers would not be further examined, despite the forensic evidence against her.

Based on these facts, and other evidence that will be produced at trial, it is apparent that Plaintiff was indeed threatened with termination concurrent with defamation, thus meeting the essential requirements laid out for pursuing Fourteenth Amendment protections against state-caused stigmatic harm without procedural due process, as defined in *Paul v. Davis*. For this reason, Plaintiff requests that this Court exercise its jurisdiction to hear this case.

Procedural due process may be implicated whenever the government threatens to take a life, liberty or property interest from an individual. If a public employee has a contract and is terminated in the middle of that contract period without any kind of a hearing, then that may constitute a property interest triggering procedural due process protections. Ordinarily (except when there is a true emergency), a pre-deprivation hearing of some kind is required. Moreover, that pre-deprivation hearing must have minimal procedural protections: the government must provide notice of the accusations against the individual, it must present evidence against him or her, and the individual must have an opportunity to respond. Defendants argue that Plaintiff is still employed, but ignore the commonsense deduction that application of the Fourteenth Amendment does not require the state-caused death of a Plaintiff before Plaintiff can sue for due process.

Although due process tolerates variances in procedure "appropriate to the nature of the case," *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 313 (1950), it is nonetheless possible to identify its core goals and requirements. First, "[p]rocedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property" *Carey v. Piphus*, 435 U.S. 247, 259 (1978). Thus, the required elements of due process are those that "minimize substantively unfair or mistaken deprivations" by enabling persons to contest the basis upon which a State proposes to deprive them of protected interests. *Fuentes v. Shevin*, 407 U.S. 67, 81 (1972). At times, the Court has also stressed the dignitary importance of procedural rights, the worth of being able to defend one's interests even if one cannot change the result. *Carey v. Piphus*, 435 U.S. 247, 266-67 (1978).

The generally held elements of procedural due process are as follows:

(1)  Notice.  "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314 (1950).

(2)  Hearing.  [S]ome form of hearing is required before an individual is finally deprived of a property [or liberty] interest."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  Parties whose rights are to be affected are entitled to be heard." *Baldwin v. Hale*, 68 U.S. (1 Wall.) 223, 233 (1863).

(3)  Impartial Tribunal.  Just as in criminal and quasi-criminal cases, an impartial decision maker is an essential right in civil proceedings as well.  *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970). "The neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law… At the same time, it preserves both the appearance and reality of fairness . . . by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him." *Marshall v. Jerrico*, 446 U.S. 238, 242 (1980); *Schweiker v. McClure*, 456 U.S. 188, 195 (1982).

(4) Confrontation and Cross-Examination.  "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970).  See also *ICC v. Louisville & Nashville R.R.*, 227 U.S. 88, 93-94 (1913). Cf. § 7(c) of the Administrative Procedure Act, 5 U.S.C. § 556(d).  Where the "evidence consists of the testimony of individuals whose memory

5

might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealously," the individual's right to show that it is untrue depends on the rights of confrontation and cross-examination. "This Court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases, . . . but also in all types of cases where administrative . . . actions were under scrutiny." *Greene v. McElroy*, 360 U.S. 474, 496-97 (1959).

(5)  Discovery.  The Court has never directly confronted this issue, but in one case it did observe in dictum that "where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue."  *Greene v. McElroy*, 360 U.S. 474, 496 (1959), quoted with approval in *Goldberg v. Kelly*, 397 U.S. 254, 270 (1970).

(6) Decision on the Record.  While this issue arises principally in the administrative law area, it is applicable generally. "[T]he decisionmaker's conclusion . . . must rest solely on the legal rules and evidence adduced at the hearing… To demonstrate compliance with this elementary requirement, the decisionmaker should state the reasons for his determination and indicate the evidence he relied on . . . though his statement need not amount to a full opinion or even formal findings of fact and conclusions of law." *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970).

(7)  Counsel.  The accused has a right to obtain counsel in the defense of his/her rights.

     Plaintiff will prove that Defendants were absolutely remiss in their failure to follow due process before and after threatening to terminate him.

## **DEFENDANTS NOT IMMUNE FROM NON-MONETARY JUDGMENTS**

Plaintiff acknowledges that the state and state actors may be immune from prosecution that solely seeks monetary compensation and relief from the state treasury, *Green v. Mansour*, 474 U.S. 64 (1985). Thusly, Plaintiff concedes further claims for such, and leaves discretion to the Court as to the imposition of such. However, Plaintiff is also seeking "all other relief deemed appropriate by this Court." If the Court holds that ESU is afforded Eleventh Amendment immunity, the Court would be deprived of jurisdiction only with respect to Plaintiff's claims for monetary relief, not for injunctive or other relief that the Court may impose. Under *Ex parte Young*, private parties can sue state officials in their official capacity to enforce federal laws and regulations, but only for prospective injunctive and declaratory relief. *Ex parte Young*, 209 U.S. 123 (1908) (holding that the Eleventh Amendment does not bar suits against state actors for injunctive relief because preventing a state official from performing allegedly illegal acts does not infringe upon a state's sovereignty).

Non-monetary injunctive and declaratory relief that Plaintiff may claim includes:

(1) Retraction by the Defendants of the statement that a hate crime did not occur.

(2) That Defendants be permanently enjoined from stating in the future that a hate crime did not occur.

(3) A public apology to Plaintiff that is published to the University, the public and to the press.

(4) A public retraction of the exoneration of Defendant Rittgers as the author of the racial slur that was found in the student's notebook.

(5)  A requirement that Defendant Rittgers either submit handwriting samples for forensic examination in comparison to the writing in the notebook, and/or that Defendant Rittgers confess to writing the slur in the student's notebook.

(6)  That Defendants who authored false narratives regarding the hate crime be disciplined.

(7)  That ESU implements explicit procedures for the reporting of hate crimes and bias incidents that conforms to best practices.

Plaintiff will suggest additional non-monetary remedies for the illegal actions of the Defendants, as Defendants' actions were willful, malicious and egregious, and have caused Plaintiff mental anguish and grief, embarrassment, loss of future employment and earnings, professional standing and threats of imminent termination.  Further, considering that all the Defendants are white, and Plaintiff is black, Defendants' conduct is especially heinous in the context of an institution of higher learning where students ought to be prepared for a diverse society in which bigotry and prejudice is unwarranted and unacceptable.  By their conduct, Defendants have reified decades old social constructs that perpetuate hegemonic practices and conduct that can no longer be viewed as acceptable in the modern era.  For these additional reasons, Defendants' conduct deserves the sternest rebuke by this Court.

WHEREFORE Plaintiff respectfully requests this Court deny Defendant's Motion To Dismiss Amended Complaint.

Dated: November 24, 2015

                                                Respectfully submitted,

                                                */s/ Melvin Hale*

                                                Melvin Hale, PhD, Plaintiff
                                                Appearing *Pro Se*
                                                P.O. Box 724
                                                Emporia, KS 66801
                                                melvinhale@ucla.edu
                                                916-690-7927

## **CERTIFICATE OF SERVICE**

**Case No. 15-4947-SAC-KGS**

I hereby certify that I have served this <u>Memorandum In Opposition To Defendants' Motion To Dismiss Amended Complaint</u> on November 24, 2015.  I personally mailed a copy of the document in the above action by first class mail, postage prepaid, addressed to:

Anne Gepford Smith
Assistant Attorney General of Kansas
Memorial Bldg., 2nd Floor
120 SW 10th Avenue
Topeka, KS 66612-1597

I am not a party to this matter.  I declare under the penalty of perjury that the foregoing is true and correct.

<u>/s/ Angelica G. Hale</u>

615 W. 15th Ave.
Emporia, KS 66801