IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


MELVIN HALE, Ph.D.,

                    Plaintiff,

vs.                                   Case No. 15-4947-SAC-KGS

EMPORIA STATE UNIVERSITY, <u>et al.</u>,

                    Defendants.


<u>**MEMORANDUM AND ORDER**</u>

     Plaintiff has brought a <u>pro se</u> civil action for damages and
injunctive relief against Emporia State University (ESU) and a
number of persons, including the Interim President and Provost,
who work at ESU.   This case is now before the court upon
defendants' motion to dismiss plaintiff's amended complaint.
Doc. No. 9.  This order will focus upon one argument made by
defendants, that is whether plaintiff has stated a claim for
relief under 42 U.S.C. § 1983 for the denial of procedural due
process.  The court agrees with defendants that plaintiff has
not stated facts that plausibly demonstrate the "stigma-plus"
requirements for an injury to a liberty interest without
procedural due process.

I. STANDARDS FOR CONSTRUING THE AMENDED COMPLAINT

     A court liberally construes a <u>pro se</u> complaint and applies
"less stringent standards than formal pleadings drafted by

lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). The court "will not supply additional factual allegations to round out a plaintiff's [pro se] complaint or construct a legal theory on plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

When deciding whether plaintiff's complaint "fails to state a claim upon which relief may be granted," the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court accepts the plaintiff's well-pled factual allegations as true and views them in the light most favorable to the plaintiff. United States v. Smith, 561 F.3d 1090, 1098 (10th Cir.2009), cert. denied, 558 U.S. 1148 (2010). The court may also consider the exhibits attached to the complaint. Id. The court, however, is not required to accept legal conclusions alleged in the complaint as true. Iqbal, 556 U.S. at 678. "Thus, mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice" to state a claim. Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting Twombly, 550 U.S. at 555).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

2

inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557).

II. PLAINTIFF'S ALLEGATIONS IN THE AMENDED COMPLAINT

The amended complaint contains the following factual allegations which the court accepts as true for the purposes of this order. Plaintiff is an Assistant Professor in the School of Library and Information Management at ESU in Emporia, Kansas. On April 8, 2015, plaintiff's wife, who was working as an assistant to the Dean for Marketing, texted plaintiff. The text indicated that an unknown person entered the office of a student who worked with plaintiff's wife and scrawled the term "NIGGAZ" on a notepad on the student's desk. Plaintiff and his wife are African-American. Plaintiff alleges that although he and his wife immediately reported the incident and were led to believe that there would be an investigation by ESU, little or no action followed.

In June 2015, plaintiff's wife contacted a handwriting examiner who compared a photograph of the racial slur with

3

handwriting samples of Debra Rittgers, an assistant to the Dean of the School of Library and Information Management. According to plaintiff, the examiner gave an opinion that Ms. Rittgers was the most probable author of the racial slur.

On September 9, 2015, the Interim President at ESU and ESU's general counsel released the results of what they termed as an "investigation." They concluded that no hate crime had occurred and they did not concur with the handwriting examiner's statement that Debra Rittgers was the most likely author of the racial slur. Rather, they stated that ESU was "formally and publicly exonerat[ing] Debbie Rittgers of any wrongdoing."

Plaintiff alleges that on September 15, 2015, he and his wife conducted a protest march at ESU in which more than 125 people participated. The following day, the Interim President sent plaintiff a letter outlining conditions for his continued employment. "One condition was that plaintiff 'issue a retraction of your accusation of Debbie Rittgers as the author of the racial slur unless you provide the University with credible, substantive evidence that Ms. Rittgers is the perpetrator.'" Doc. No. 4, pp. 7-8. Other conditions were that plaintiff participate in mediation with faculty and staff, that he acknowledge certain behaviors that are unacceptable in the

workplace, and that he agree to follow ESU grievance procedures in the future.[1]  Doc. No. 4, pp. 47-48.

Plaintiff does not allege discharge, termination, demotion or suspension.  He does allege that he has been forced "to work from home, denying him face-to-face courses with students.  All of Plaintiff's classes are now online."  Doc. No. 4, p. 11.

Plaintiff's amended complaint alleges three causes of action.  Count I alleges "false light invasion of privacy."  Count II alleges defamation.  Count III alleges a denial of due process.  The first two counts are state law causes of action.  Count III is brought pursuant to federal law, 42 U.S.C. § 1983.

III. PLAINTIFF'S ALLEGATIONS FAIL TO STATE A § 1983 CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Section 1983 creates a cause of action on behalf of persons whose constitutional rights have been deprived by persons acting under color of state law.  Plaintiff alleges that he has been denied his constitutional right to procedural due process by defendants.  "Procedural due process is only available to plaintiffs that establish the existence of a recognized property or liberty interest."  Stidham v. Peace Officer Standards and Training, 265 F.3d 1144, 1149 (10th Cir. 2001). "The first step in assessing a claimed procedural due process violation is to identify a constitutionally protected liberty or property

---

[1] Plaintiff alleges in his response to the motion to dismiss that defendants made similar demands to plaintiff on September 9, 2015.

interest." Elwell v. Byers, 699 F.3d 1208, 1213 (10th Cir. 2012). The Supreme Court has observed that its cases do not establish that "reputation alone, apart from some more tangible interests such as employment is either liberty or property by itself sufficient to invoke the procedural protection of the Due Process Clause." Paul v. Davis, 424 U.S. 693, 701 (1976). The Court stated that it has not been considered "sufficient to establish a claim under § 1983 and the Fourteenth Amendment that there simply be defamation by a state official; the defamation had to occur in the course of the termination of employment." Id. at 710. This has been labelled the "stigma-plus" standard.

Defendants' motion to dismiss argues, among other matters, that plaintiff's § 1983 action must be dismissed because plaintiff's allegations and legal argument cannot satisfy the "stigma-plus" standard for triggering a due process requirement. Plaintiff argues that he satisfies the stigma-plus standard because his liberty interest in pursuing employment was jeopardized by a threat of discharge concurrent with defamation. Doc. No. 10, p. 3. The court agrees with defendants.

Courts have considered what was meant in Paul when the Court stated that "the defamation had to occur in the course of the termination of employment." The holdings of many cases lead this court to find that a threat of termination is not a sufficient injury concurrent with defamation to qualify as a

6

liberty interest.   In Siegert v. Gilley, 500 U.S. 226, 234 (1991), the Court held that alleged defamatory statements made by a hospital supervisor some weeks after the plaintiff had voluntarily resigned from a job at the hospital did not trigger a due process requirement even though they seriously impaired the plaintiff's future employment opportunities.   Shortly before Siegert was decided, the Tenth Circuit held in Renaud v. Wyoming Dept. of Family Services, 203 F.3d 723, 728 n.1 (10th Cir. 2000) that "Paul clearly requires that the defamation occur in the course of the termination of employment."   The Tenth Circuit commented years later that the Supreme Court in Siegert confirmed the Renaud opinion's interpretation of Paul by finding that "because '[t]he alleged defamation was not uttered incident to the termination of [his] employment by the hospital,' the plaintiff had failed to state a claim for the denial of a constitutional right."   Guttman v. Khalsa, 669 F.3d 1101, 1126 (10th Cir. 2012).   In Castillo v. Hobbs Mun. School Bd., 315 Fed.Appx. 693, 696-97 (10th Cir. 2009), the Tenth Circuit also required termination to be part of the "stigma-plus" requirements in an employment context.   There, the court found no liberty interest violation in connection with alleged defamatory communications where a plaintiff's one-year contract as a school administrator was not renewed but he was offered and

he accepted a teaching position.[2]   There is Tenth Circuit case law which suggests that there may be a liberty interest injury without a termination, if other employment opportunities are alleged to be "foreclosed," not just made more difficult to obtain because of reputational damage.   See Sandoval v. City of Boulder, 388 F.3d 1312, 1329 (10th Cir. 2004)(discussing Workman v. Jordan, 32 F.3d 475, 481 (10th Cir. 1994)).   This is a narrowly interpreted exception.   In Sandoval, the court determined that the plaintiff's allegations did not allege such an injury even though plaintiff stated that she had applied for and been rejected from approximately 100 positions for which she was qualified.   Id.   The court indicated that plaintiff's claim was rejected because she did not allege that her reputational injury had made her "categorically ineligible" for private or public employment.   Id.   Plaintiff's allegations do not fall within this exception if it continues to exist.[3]

Several cases by other circuit courts, many arising from academic settings, support the view that termination or significant demotion is required in addition to stigma to

_____

[2] The plaintiff in Castillo ultimately took an administration position with another school system, after accepting the teaching position with the defendant.
[3] The Tenth Circuit has commented that the test for charging a liberty interest violation has been clarified and that the rule in the Tenth Circuit is that "an employee must show both that the defamatory statement occurred in the course of employment termination and that it will foreclose other employment opportunities." Bjorklund v. Miller, 467 Fed.Appx. 758, 767 (10th Cir. 2012)(emphasis added).   This would appear to prevent any claim of a liberty interest violation in an employment context unless there is a termination.

8

establish a liberty interest injury. See <u>Brown v. Simmons</u>, 478 F.3d 922, 923 (8th Cir. 2007)(teacher who was transferred and lost pay did not state a liberty interest even though he alleged defamation); <u>Ridpath v. Board of Governors Marshall University</u>, 447 F.3d 292, 309 (4th Cir. 2006)(reciting general rule in the Fourth Circuit that stigmatizing remarks must be made in the course of a discharge or significant demotion); <u>Powell v. Fujimoto</u>, 119 Fed.Appx. 803, 807-08 (7th Cir. 2004)(denying claim where professor was not dismissed, transferred or demoted to an inferior position); <u>Cannon v. City of West Palm Beach</u>, 250 F.3d 1299, 1303 (11th Cir. 2001)(citing circuit rule that "discharge or more" is required to satisfy "plus" element of stigma-plus test); <u>Klug v. Chicago School Reform Bd. of Trustees</u>, 197 F.3d 853, 859-60 (7th Cir. 1999)(denying claim where plaintiff was shifted from an administrative position to a teaching position and lost an opportunity for overtime pay); <u>Edwards v. California University of Pennsylvania</u>, 156 F.3d 488, 492 (3rd Cir. 1998) <u>cert. denied</u>, 525 U.S. 1143 (1999)(claim denied where plaintiff remained employed with pay, but was removed from class duties); <u>Ludwig v. Board of Trustees of Ferris State University</u>, 123 F.3d 404, 410 (6th Cir. 1997)(citing general rule requiring defamation in connection with an employee's termination); <u>Schultea v. Wood</u>, 27 F.3d 1112, 1117-18 (5th Cir. 1994)(reassignment from police

chief to assistant chief at the same rate of pay does not support a liberty interest claim).

IV. CONCLUSION

On the basis of the above-described case law, the court concludes that plaintiff's amended complaint does not plausibly portray an injury to a liberty interest which warrants the protections of the Due Process Clause. The court shall grant plaintiff 21 days from the date of this order to file a second amended complaint which states a claim under § 1983 upon which relief may be granted. If plaintiff does not do so, the court shall dismiss the § 1983 claim with prejudice and dismiss plaintiff's state law claims without prejudice. See Smith v. City of Enid, 149 F.3d 1151, 1156 (10th Cir. 1998)("[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims").

**IT IS SO ORDERED.**

Dated this 12th day of January, 2016, at Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge