IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MELVIN HALE, Ph.D.,

               Plaintiff,

vs.                               Case No. 15-4947-SAC-KGS

EMPORIA STATE UNIVERSITY, et al.,

               Defendants.

## MEMORANDUM AND ORDER

Plaintiff is proceeding pro se in this matter. He filed his original complaint on October 14, 2015 and named Emporia State University (ESU) as the only defendant. The original complaint did not list any federal law claims and offered no basis for diversity jurisdiction. But, plaintiff filed an amended complaint on November 4, 2015 which added a due process claim under 42 U.S.C. § 1983 and further added the following defendants: Jackie Vietti, Interim President of ESU; David Cordle, Provost; Judy Anderson, Executive Director of Human Relations; Gwen Alexander Dean of the School of Library and Information Management (SLIM); Chris Hoover, Chief of Police at ESU; and Debra Rittgers, Assistant to the Dean of SLIM. On January 12, 2016, this court issued an order ruling upon a motion to dismiss the amended complaint. The court found that plaintiff's § 1983 claim did not state facts which would support

plaintiff's claim of a liberty interest violation.  The court held that the motion to dismiss would be granted unless plaintiff filed a second amended complaint.  On January 21, 2016, plaintiff filed a second amended complaint which added claims and allegations under § 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.  The second amended complaint also added as defendants:  Kevin Johnson, General Counsel for ESU, and Ray Lauber, HR Specialist at ESU.  The second amended complaint renders the original complaint and the first amended complaint moot.  So, for the purposes of clearing up the docket, the motion to dismiss the original complaint (Doc. No. 6) and the motion to dismiss the amended complaint (Doc. No. 9) shall be denied as moot.

This case is now before the court upon defendants' motion to dismiss the second amended complaint.  Doc. No. 15.  This motion argues that:  for a variety of reasons plaintiff has failed to state a claim under federal law upon which relief may be granted; plaintiff has not made proper service of process upon defendants Kevin Johnson and Ray Lauber; and that the court should not exercise supplemental jurisdiction over plaintiff's state law claims.

I.   PLAINTIFF'S ALLEGATIONS IN THE SECOND AMENDED COMPLAINT

Plaintiff is a professor at Emporia State University (ESU) in Emporia, Kansas.  He taught on-line courses in the fall

semester of 2015. He is being paid but has not been assigned responsibilities for the current semester. Plaintiff was informed on December 14, 2015 that his contract with ESU will not be renewed at the end of the spring 2016 semester.

Plaintiff contends that he reported a hate crime or bias incident in April 2015. The incident involved a racially offensive term scrawled on a notepad in the office of a graduate student who worked with plaintiff's wife. At that time, plaintiff's wife was an ESU employee and, like plaintiff, worked in SLIM. Plaintiff was disappointed that nothing was done about the incident for two months. He and his wife contacted a handwriting expert who gave an opinion that a long-time ESU employee named Debra Rittgers, an assistant to the Dean of SLIM, wrote the racial slur. Around July 1, 2015, plaintiff and his wife filed a complaint with the ESU Police Department. The police department concluded, however, that no crime had occurred and that no formal report or physical investigation would be conducted. Plaintiff alleges that the Interim President of ESU, Dr. Jackie Vietti, instructed a school HR specialist, Ray Lauber, to provide a private report about the incident. On September 9, 2015, Dr. Vietti and ESU General Counsel Kevin Johnson released a statement saying that Lauber's "investigation" concluded that no hate crime occurred. Dr.

3

Vietti further stated that ESU was publicly exonerating Rittgers of any wrongdoing.

On September 15, 2015, plaintiff and his wife conducted a protest march at ESU in which over 125 people participated. On September 16, 2015, Dr. Vietti sent plaintiff a letter outlining conditions for his continued employment at ESU. These conditions included that by October 15, 2015: plaintiff contact an employee assistance program called the Fit for Duty Program; that plaintiff make serious, positive efforts to engage with Dr. Gwen Alexander (the Dean of SLIM) in a mediation session to come "to consensus on steps for a professional working relationship;" and that plaintiff participate in a mediation session with SLIM faculty and staff "with the interest of identifying ways to repair relationships and move forward positively with the department." The letter further required that upon plaintiff's return from a "cooling off period," the following conditions be met for continued employment: 1) that plaintiff acknowledge and accept that his behaviors are unacceptable in the workplace – "[t]hese behaviors include, but are not limited to, raising your voice, accusing others using inflammatory statements, or engaging others in a way that may otherwise be perceived as intimidating or bullying"; that plaintiff issue a retraction of the accusation that Rittgers authored the racial slur unless plaintiff provided credible, substantive evidence that Rittgers

was the perpetrator; and that plaintiff agree to follow the University grievance process in the future. Doc. No. 13, pp. 52-3.

On October 12, 2015, ESU Provost David Cordle wrote plaintiff observing that plaintiff had given no indication of accepting ESU's conditions for his continued employment. The letter set out further conditions for continuing plaintiff's employment through the end of the 2015-2016 academic year. One of the conditions was that plaintiff resign his faculty position effective May 17, 2016; that he drop or waive any claims against ESU or its faculty and staff; that he take down a website <marchonemporia.com> and not begin any similar websites; and that he make no further comments concerning Rittgers.

On December 14, 2015, Cordle wrote plaintiff another letter informing plaintiff that he would not renew plaintiff's probationary faculty appointment and that his employment would expire at the close of the 2015-16 academic year. The letter indicated that plaintiff would have no instruction or other work obligations during the spring 2016 semester, although plaintiff would still receive his salary and benefits.

Plaintiff lists his causes of action in the second amended complaint as follows: Count I – False Light Invasion of Privacy; Count II – Defamation; Count III – Liberty Interest; Count IV – Due Process; Count V – Freedom of Speech; Count VI –

Retaliation and Wrongful Termination; Count VII – Punitive Damages.

II. STANDARDS

In the court's prior order, Doc. No. 12, the court set forth standards for considering pro se pleadings and for assessing whether a complaint should be dismissed under FED.R.CIV.P. 12(b)(6) for failure to state a claim. The court shall incorporate that discussion here by reference.

Defendants make some arguments in their motion to dismiss which the court construes as asking, pursuant to FED.R.CIV.P. 12(b)(1), that claims be dismissed for lack of subject-matter jurisdiction, and that defendants Lauber and Johnson be dismissed, pursuant to FED.R.CIV.P. 12(b)(4)&(5), for insufficient process or insufficient service of process. A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) generally takes one of two forms – – a facial attack which argues there is no jurisdiction even accepting the complaint's allegations as true, and a factual attack which goes beyond the allegations in the complaint and challenges the facts on which subject matter jurisdiction is based. Holt v. United States, 46 F.3d 1000, 1002-03 (10th Cir. 1995). With a factual attack, the court has discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. Id. Referring to such materials outside

6

of the complaint will not convert the motion to a summary judgment motion unless the jurisdictional question is intertwined with the merits of the case. Id.

If there is insufficient process or service of process under FED.R.CIV.P. 4, then the federal court lacks personal jurisdiction over a defendant. See Hagan v. Credit Union of America, 2011 WL 6739595 *1 (D.Kan. 12/22/2011). Plaintiff has the burden of showing by a preponderance of the evidence that jurisdiction is proper. United States ex rel. Stone v. Rockwell Int'l Corp., 282 F.3d 787, 797 (10th Cir.2002). "The parties may submit affidavits and other documentary evidence for the Court's consideration, and plaintiff is entitled to the benefit of any factual doubt." Taylor v. Osawatomie State Hosp., No. 07-2346, 2008 WL 2891011 * 1 (D.Kan. July 24, 2008).

III. PLAINTIFF'S § 1983 AND STATE LAW CLAIMS, AS CURRENTLY ALLEGED, ARE BARRED BY THE ELEVENTH AMENDMENT.

Defendants' first argument for dismissal asserts that the Eleventh Amendment bars plaintiff's damages claims in Counts I through V and VII against defendant ESU and the individual defendants in their official capacities. Plaintiff's response appears to agree with this argument to a large degree and so does the court.

The Supreme Court has interpreted the Eleventh Amendment to bar suits in federal court against a nonconsenting state brought

7

by the state's own citizen or citizens of another state. Arbogast v. Kansas, Dept. of Labor, 789 F.3d 1174, 1181 (10th Cir. 2015). Congress may abrogate states' Eleventh Amendment immunity by exercising its authority under section 5 of the Fourteenth Amendment. Id. Congress did so when it amended Title VII to include state and local governments as "employers." Crumpacker v. Kansas Dept. of Human Resources, 338 F.3d 1163, 1169 (10th Cir. 2003). Congress did not abrogate states' Eleventh Amendment immunity when it enacted § 1983. Ellis v. University of Kansas Medical Center, 163 F.3d 1186, 1196 (10th Cir. 1998). A state may also waive its Eleventh Amendment immunity. Arbogast, 789 F.3d at 1181-82.

Defendants cite Gray v. Univ. of Ks. Med. Ctr., 715 F.Supp. 1041 (D.Kan. 1989) among other cases for their Eleventh Amendment argument. In Gray, the court held that state universities such as ESU are considered alter egos of the State of Kansas which, pursuant to the Eleventh Amendment, may not be sued in federal court. 715 F.Supp. at 1042. The court further stated that: "[S]tate university employees sued in their official capacities also enjoy Eleventh Amendment immunity." Id. at 1043. But, state university employees may be sued in their individual capacities without protection by the Eleventh Amendment. Id.

8

In <u>Gray</u>, the court commented that the failure "to allege official or individual capacity in the caption is merely a formal error and not a fatal defect." <u>Id.</u> The court found in <u>Gray</u> that the complaint did not indicate whether the plaintiff was suing the individual defendants in their official or individual capacities. So, the court allowed the plaintiff to file an amended complaint to clear up any ambiguities. <u>Id.</u>

A similar situation exists here. The second amended complaint does not use the term "individual capacity" or "official capacity." Plaintiff states that he is suing defendant Cordle in his capacity as Provost and similarly that he is suing the other individual defendants in the capacity indicated by their job title. While this certainly suggests that plaintiff is bringing this case against the individual defendants in their official capacities (as does plaintiff's argumentation in response to the motion to dismiss), the court believes that plaintiff should be allowed the opportunity to amend the complaint, if he chooses, and state clearly, if he desires, that he is suing the individual defendants in their individual capacities.

Plaintiff also argues that injunctive relief may be granted against defendants acting in their official capacities. This is correct. "Eleventh Amendment immunity does not extend to a state official sued in his official capacity when the plaintiff

9

seeks only prospective, injunctive relief." Tarrant Regional Water Dist. v. Sevenoaks, 545 F.3d 906, 911 (10th Cir. 2008). Injunctive relief, however, from a federal court against state agencies such as ESU is barred by the Eleventh Amendment. Ellis, supra.

Plaintiff does not describe a request for injunctive relief in the second amended complaint or even use the term. He discusses the issue of injunctive relief in his response to the motion to dismiss. But, his response to the motion to dismiss is not an amendment to his complaint. See Perkins v. Silverstein, 939 F.2d 463, 470 n.6 (7th Cir. 1991); Hansen-Moor Assocs., Inc. v. Allied B/J Trust, 1992 WL 190714 *3 (D.Kan. 7/17/1992). Plaintiff may not add to or change his claims in a response to a motion to dismiss. If plaintiff intends to request injunctive relief, then he should amend the complaint to describe the injunctive relief which he is requesting.

In sum, plaintiff's § 1983 and state law claims for damages against ESU and defendants in their official capacities are barred by the Eleventh Amendment. Also, plaintiff does not describe a claim for injunctive relief in the second amended complaint. Therefore, all of plaintiff's claims under § 1983 will be dismissed unless plaintiff files a third amended complaint which asserts damages claims against defendants in their individual capacities or describes a claim for injunctive

relief against the individual defendants in their official capacities.

IV. PLAINTIFF'S § 1983 CLAIM AGAINST ESU AND THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES SHALL BE DISMISSED UNLESS IT IS AMENDED.

Section 1983 provides that "persons" acting under the authority of a State may not deprive a citizen of the United States of the rights and privileges protected under the Constitution and federal law. Defendants argue that any claim plaintiff makes under § 1983 must be dismissed because neither a state agency, such as ESU, nor officials acting in their official capacities, are "persons" subject to being sued under the statute because a suit against a state officer in his official capacity is no different from a suit against the official's office. This argument, which is somewhat of an echo of the Eleventh Amendment analysis, is correct. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). But, § 1983, as interpreted in Will and other cases, does permit damages claims against state officials in their individual capacity (see Hafer v. Melo, 502 U.S. 21, 30 (1991)) and claims for injunctive relief against state officials in their official capacity. Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004). Plaintiff may not proceed against defendant ESU under § 1983. Nor may plaintiff proceed against the individual defendants unless plaintiff amends the complaint to state that

11

he is bringing damages claims against them in their individual capacities and to state the injunctive remedies he is seeking against defendants in their official capacities.

V. THE SECOND AMENDED COMPLAINT DOES NOT STATE A CLAIM FOR A LIBERTY INTEREST VIOLATION.

Defendants contend that in Count III plaintiff has not stated a liberty interest violation upon which relief may be granted. The elements of a liberty interest violation require: 1) that defendants made statements that impugn the good name, reputation, honor or integrity of plaintiff; 2) that the statements were false; 3) that the statements were made in the course of terminating the employee or must foreclose other employment opportunities; and 4) that the statements were published. Renaud v. Wyoming Dept. of Family Services, 203 F.3d 723, 727 (10th Cir. 2000)(quoting Workman v. Jordan, 32 F.3d 475, 481 (10th Cir. 1994). The court in Renaud, 203 F.3d at 728 n.1, and more recently in Bjorklund v. Miller, 467 Fed.Appx. 758, 767 (10th Cir. 2012) indicated that the statements must have been made in the course of terminating the employee <u>and</u> they must foreclose other employment opportunities.

Plaintiff's allegations do not make a plausible showing that he can demonstrate all of these elements. Exhibits D, E, and G to Doc. No. 13 are the published statements from defendants which plaintiff has attached as exhibits to the

12

second amended complaint. Exhibits D and E do not mention plaintiff by name and do not impugn plaintiff's good name, reputation, honor or integrity. Exhibit G contains statements to the college newspaper by Dr. Vietti. The statements refer to plaintiff by name, but do not impugn the plaintiff.[1] In general, Exhibits D and E take a position which disagrees with plaintiff. Plaintiff believed a hate crime occurred. The published statements disagreed. Plaintiff believed defendant Rittgers perpetrated the racial slur on the student's notebook. The published statements disagreed. These statements from defendants and the other published statements alluded to in the second amended complaint and its exhibits, did not accuse plaintiff of dishonesty, immorality, criminality or impugn plaintiff's good name. Therefore, plaintiff has not alleged facts upon which he may claim that his liberty interests were violated by defendants. Cf., Joseph v. Shepherd, 211 Fed.Appx. 692, 696 (10th Cir. 2006) cert. denied, 552 U.S. 813 (2007)(failure to exonerate is not the same as impugning a person's good name, reputation, integrity or honor).

---

[1] The statements are: "A set of expectations has been presented to Dr. Hale to be completed prior to and upon his return to campus . . . One of the conditions does relate to public comments he has made regarding Debra Rittgers, but it is an incomplete statement that Dr. Hale's employment will be terminated if he does not make a retraction. The University is unable to comment further due to the fact this is a personnel matter. . . . Dr. Hale remains an employee of the college, teaching his assigned on-line classes for the fall semester at a distance. His physical return to campus is predicated on acceptance of a set of expectations that is designed to foster a positive work environment for all within SLIM, including Dr. Hale." Doc. No. 13, pp. 49-50.

In addition, plaintiff does not assert facts showing that the alleged improper statements were made in the course of plaintiff's termination. ESU privately mentioned the possibility of plaintiff resigning effective May 17, 2016 as part of a severance agreement it offered to plaintiff in October 2015. But, it did not inform plaintiff that ESU would not renew his teaching contract at the end of the spring 2016 semester until December 14, 2015. The published statements from defendants which plaintiff contends were defamatory or stigmatizing were made in September 2015 or earlier in the year. Plaintiff does not allege that a defendant publicly described the reasons for plaintiff's termination in a manner that impugned plaintiff's good name. Nor can plaintiff otherwise plausibly demonstrate that his reputation was impugned by defendants in the course of his termination. For these reasons, plaintiff's liberty interest allegations do not state a claim upon which relief may be granted.

VI. PLAINTIFF'S DUE PROCESS CLAIM FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

In Count IV of the second amended complaint, plaintiff alleges that defendants violated his right to due process before he was deprived of a liberty or property interest. The liberty interest claim repeats plaintiff's claim in Count III. As for a property interest claim, defendants contend that plaintiff has

14

not stated facts which would support a claim that he was denied a property interest. Plaintiff has not responded to this argument.

As defendants note, plaintiff's contract as an instructor at ESU expires in May 2016. Defendants have informed plaintiff that the contract will not be renewed. Plaintiff is not a tenured employee and so he does not have a property interest in continued employment at ESU after his contract expires. See Cuenca v. University of Kansas, 265 F.Supp.2d 1191, 1215 (D.Kan. 2003); Meiners v. University of Kansas, 239 F.Supp.2d 1175, 1201-02 (D.Kan. 2002). Accordingly, plaintiff has not stated a claim for the denial of a property interest in continued employment.

VII. DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S TITLE VII CLAIM SHALL BE GRANTED SUBJECT TO THE FILING OF A THIRD AMENDED COMPLAINT.

Defendants next argue against plaintiff's Title VII claim on two grounds. First, defendants contend that plaintiff has not alleged an adverse employment action aside from termination. Second, defendants allege that plaintiff has not exhausted his administrative remedies as to his termination claim.

A. Plaintiff has alleged an adverse employment action.

A plaintiff must allege an adverse employment action in order to bring a claim under Title VII. See Hillig v. Rumsfeld, 381 F.3d 1028, 1031 (10th Cir. 2004). An "adverse employment

15

action" includes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. See id. at 1032-34. Generally, it requires an action by an employer which is materially adverse to the employee's job status or future employment prospects. Id. at 1033. A mere inconvenience or an alteration of job responsibilities is not an adverse employment action. Id. at 1031. Plaintiff alleges a demotion among other matters in his second amended complaint and in his administrative complaint. At this stage, the court cannot say that it is implausible that plaintiff can demonstrate that his alleged demotion was a significant adverse change in employment status. Therefore, this claim may proceed subject to an amendment to the complaint alleging facts to support administrative exhaustion.[2]

B. **Plaintiff has not alleged facts showing the jurisdictional prerequisite of administrative exhaustion as to his Title VII claims**.

"A plaintiff must exhaust his administrative remedies before bringing suit under Title VII." Aramburu v. Boeing Co., 112 F.3d 1398, 1409 (10th Cir. 1997). This is a predicate for

---

[2] Plaintiff has submitted pleadings in response to the motion to dismiss which indicate that he has received a right-to-sue letter relating to the administrative complaint where he alleged that he was demoted. Plaintiff should amend his complaint to allege this jurisdictional fact as further explained in the next section of this order.

16

the court's jurisdiction.  Annett v. Univ. of Kan., 371 F.3d 1233, 1238 (10th Cir. 2004).  "'Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate, actionable 'unlawful employment practice'" for which plaintiff's administrative remedies must be exhausted.  Martinez v. Potter, 347 F.3d 1208, 1210 (10th Cir. 2003)(quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002)).  Each discriminatory or retaliatory act must be separately exhausted, even when the acts post-date the EEOC complaint and reasonably relate to others presented to the EEOC.  Eisenhour v. Weber County, 744 F.3d 1220, 1227 (10th Cir. 2014).  "[F]ederal courts lack jurisdiction over incidents occurring after the filing of an EEOC claim unless the plaintiff files a new EEOC claim or otherwise amends her original EEOC claim to add the new incidents."  Id.

Plaintiff alleges in the second amended complaint that he has requested a right-to-sue letter and that one is expected shortly.  In plaintiff's pleadings in response to the motion to dismiss, he has attached a right-to-sue letter.  Doc. No. 17-1, p. 66.  Plaintiff, however, has not amended his complaint to allege the receipt of the right-to-sue letter.  In addition, plaintiff does not allege that he has exhausted his administrative remedies upon a claim of discriminatory or

17

retaliatory termination. Nor does it appear plausible that plaintiff has done so.

Defendants have submitted the administrative complaint which plaintiff filed and for which plaintiff received the right to sue letter. The administrative complaint is dated October 13, 2015 which is before plaintiff was informed that his contract of employment would not be renewed. There is no indication that plaintiff amended the administrative complaint or filed a new administrative complaint to allege that defendants decided not to renew plaintiff's contract.

Termination and refusal to hire are considered easily identifiable discrete acts which require exhaustion of administrative remedies. Morgan, 536 U.S. at 114. Plaintiff may not bring his termination claim without alleging facts showing that he has exhausted his administrative remedies upon that claim. Nor may plaintiff proceed upon any other Title VII claims without amending his complaint to allege administrative exhaustion.

VIII. IT IS UNNECESSARY TO DECIDE WHETHER PLAINTIFF PROPERLY SERVED DEFENDANTS JOHNSON AND LAUBER.

Plaintiff is suing defendants Johnson and Lauber in their official capacities as state employees. These defendants do not expressly allege they have been improperly served as defendants in their official capacities. "Official capacity suits are

treated in all respects as suits against the underlying entity." Bell v. City of Topeka, 2007 WL 628188 *3 (D.Kan. 2/26/2007). The underlying entity in this case – ESU – has not objected to service of process which would be controlled by FED.R.CIV.P. 4(j)(2).  Nor has any defendant claimed that service under Rule 4(j)(2) was improper.  Under these circumstances, the court finds it unnecessary to consider the objections to service made on behalf of Johnson and Lauber.

If plaintiff amends the complaint to sue individual defendants in their individual capacities he will have to follow the provisions of FED.R.CIV.P. 4(e) to accomplish proper service of process upon the individual defendants.

IX. THE COURT WILL NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS UNLESS A FEDERAL LAW CLAIM REMAINS PENDING.

As the court explained in a prior order in this case, "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." Smith v. City of Enid, 149 F.3d 1151, 1156 (10th Cir. 1998).  Unless, plaintiff files a third amended complaint which responds to the deficiencies of the second amended complaint as described in this order, the court will dismiss the state law claims in this case without prejudice.

19

X. CONCLUSION

Defendants' motions to dismiss (Doc. Nos. 6 and 9) are denied as moot. Defendants' motion to dismiss (Doc. No. 15) shall be granted after 21 days from the date of this order unless plaintiff files a third amended complaint which corrects at least some of the deficiencies in plaintiff's second amended complaint. Plaintiff should consider amending the complaint to: name individuals as defendants in their individual capacities; to describe the injunctive relief, if any, which plaintiff seeks against defendants in their official capacities; and to allege the exhaustion of administrative remedies as to specific claims being pursued under Title VII. Plaintiff shall be held responsible for accomplishing proper service of process upon any individual defendant sued in his or her individual capacity.

**IT IS SO ORDERED.**

Dated this 8th day of March, 2016, at Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge