IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MELVIN HALE, Ph.D.,

        Plaintiff,

vs.                          Case No. 15-4947-SAC-KGS

EMPORIA STATE UNIVERSITY, et al.,

        Defendants.

**MEMORANDUM AND ORDER**

This case is currently proceeding upon a third amended complaint which names 17 defendants, most of whom were added in the third amended complaint. The pro se plaintiff is a college professor formerly at Emporia State University (ESU). He alleges that his legal rights were violated by persons who supposedly defamed plaintiff and retaliated against him. Plaintiff claims he was retaliated against for reporting a racial bias incident and discrimination on campus, and protesting that the incident was not earnestly investigated and chronicled. This order will address three motions to dismiss all or parts of the third amended complaint and plaintiff's motion to dismiss a counterclaim.

I. NAMED DEFENDANTS

Plaintiff names the following defendants in the third amended complaint: Emporia State University; Jackie Vietti,

Interim President of ESU; David Cordle, Provost; Judy Anderson, Executive Director of Human Relations; Gwen Alexander, Dean of the School of Library and Information Management (SLIM); Chris Hoover, Chief of Police at ESU; Debra Rittgers, Assistant to the Dean of SLIM; Kevin Johnson, general counsel to ESU; Ray Lauber, HR specialist at ESU; Mirah Dow, interim dean of SLIM; Gary Wyatt, former interim dean of SLIM and assistant provost at ESU; Jason Brooks; assistant dean for diversity and inclusion at ESU; Sarah Spoon, a reporter and editor at the student newspaper; Ariel Cooley, the editor-in-chief of the student newspaper; Derek Wilson, student president of the honors college; Deidra Elijah, vice-president of the Black Student Union; and Kayla Gilmore, student assistant to the associate dean for diversity and inclusion. Plaintiff alleges that he is suing all the individual defendants in their individual and official capacities.

II. PLAINTIFF'S ALLEGATIONS IN THE THIRD AMENDED COMPLAINT

Plaintiff alleges that he held a position as an Assistant Professor in SLIM at ESU from July 1, 2014 to December 14, 2015. His wife, Angelica, was hired as an assistant to a dean at ESU, also on July 1, 2014.

Plaintiff alleges that in December 2014, he spoke to defendant Gwen Alexander, the Dean of SLIM, and accused defendant Debra Rittgers, an assistant to the Dean of SLIM of

racial discrimination directed towards his wife. Plaintiff claims that defendant Alexander generally denied plaintiff's accusations and commented that plaintiff and his wife were being too sensitive. Plaintiff alleges that Alexander and Rittgers are close personal friends and that Rittgers was Alexander's right-hand assistant.

Plaintiff alleges that he told defendant Alexander that his wife would not return to work at SLIM unless certain conditions were met. One of the conditions (which was agreed to) was that his wife, who was not a faculty member, be moved from SLIM offices with defendant Rittgers on the third floor, to a private office on the fourth (top) floor of a building. Plaintiff asserts that this was a "prime location" and the "second largest office on the faculty floor" and he claims that this "ultimately ignited the rage" that resulted in a racial slur being found in a student's office. Doc. No. 20, p. 6.

Plaintiff claims that, thereafter, defendant Rittgers had limited interaction and communication with Angelica Hale and with a graduate assistant who worked with Angelica Hale. He further claims that defendant Rittgers did not transfer Angelica Hale's phone to the new office for almost six months, although that was Rittgers' responsibility. He also asserts that Rittgers interfered with his wife's assignments for her graduate

student, but he does not describe this with specificity.  Id. at
p. 7.

Plaintiff alleges that ESU did not have one tenured
African-American professor in the 2014-2015 academic school year
and that he was the only African-American tenure track faculty
member.  He also alleges that senior administration was entirely
Caucasian.  He claims that Alexander seemingly condoned racist
conduct by remarking to plaintiff that "This is Kansas."  Id. at
p. 8.  At the same time, he claims that Alexander ridiculed the
notion of racism and disparaged plaintiff and his wife.  Id.  He
asserts that this became the official stance at ESU after
plaintiff and his wife reported a racial slur on April 8, 2015.

The slur involved someone writing the word "NIGGAZ" in the
notepad of the graduate student who worked with Angelica Hale.
Plaintiff requested that defendant Alexander investigate the
incident and he informed defendant Mirah Dow, the SLIM Faculty
Chair, about the incident.  Plaintiff alleges that Alexander did
little or nothing to investigate.

Plaintiff claims that in May 2015, Angelica Hale came to
believe that the handwriting of the slur was similar to
defendant Rittgers' distinctive handwriting.  She sent samples
of Rittgers' handwriting and a picture of the slur to Wendy
Carlson, a handwriting examiner.  According to plaintiff,
Carlson concluded that Rittgers was the author of the slur,

assigning her level of confidence at eight on a nine-point scale.

Plaintiff states that he and his wife reported the bias incident in late June 2015 to defendant David Cordle, ESU Provost, and to defendant Judy Anderson, Director of Human Resources.  They also reported this matter to defendant Chris Hoover, ESU Police Chief.   Hoover allegedly refused to investigate the matter and took the position that no crime occurred.

Plaintiff states that defendant Ray Lauber, an HR specialist, contacted plaintiff in early July 2015 and relayed that he was doing a private report about the incident for defendant Dr. Jackie Vietti, the Interim President of ESU. Plaintiff and Angelica Hale met with Lauber and related their thoughts and concerns.  Later, they were informed that Lauber or his family had a personal relationship with defendant Rittgers. So, plaintiff and his wife asked defendants Lauber, Vietti, Cordle and defendant Kevin Johnson, general counsel for ESU, that Lauber remove himself or be removed from the investigation. Lauber refused and so did Vietti.

Plaintiff claims that reports of the "bias incident at ESU" received media attention at the end of August 2015.  Plaintiff states that defendants ESU, Vietti, Cordle, Alexander, Anderson, Johnson and Lauber "told the media and the campus on numerous

occasions that ESU would make a fair, logical and thorough 'investigation' of the bias incident allegations." Id. at p. 11.

According to plaintiff, Vietti, Cordle, Wyatt, Anderson, Johnson and Lauber stated that based on the investigation they concluded that no crime occurred. Id. at ¶ 83. Plaintiff alleges that Johnson stated that there were no hate crime laws in Kansas and that writing the word "NIGGAZ" on a piece of paper could not be a crime. Id. at p. 12. Plaintiff further alleges that Vietti said that, while ESU concluded that no hate crime occurred, it was not hiding behind the legal definition of hate crime. Id. at ¶ 89. Defendant Rittgers was publicly exonerated by ESU.

Plaintiff alleges that on September 9, 2015, Vietti gave plaintiff a document and demanded that he sign it or he would not have a future at ESU. The document stated that plaintiff was to seek counseling and refrain from discussing his concerns about discrimination in SLIM. Plaintiff was advised by his counsel at the meeting not to sign the document and counsel told Vietti that such a document would have a chilling effect upon employees who reported hate crimes.

Plaintiff alleges that three crimes were committed during the bias incident: unlawful entry; vandalism and hate speech. He also contends that hate speech is "on the spectrum" of a hate

crime.  Id. at p. 14.   He asserts that defendants cannot categorically state that defendant Rittgers is innocent, or lawfully exonerate her without violating plaintiff's civil rights by treating him differently.   Id.

Plaintiff contends that Vietti met with Rittgers on more than one occasion during the "investigation" but refused to meet with plaintiff or Angelica Hale.   He asserts that the investigation ignored and/or disparaged forensic evidence and allowed critical evidence to disappear.  Plaintiff contends that the investigation did not pass the "due process" test of impartiality and procedural fairness, in part because of Lauber's "longtime involvement" with Rittgers.   Plaintiff also asserts that the investigation was an attempt to destroy plaintiff's credibility.

Plaintiff claims that a day after plaintiff participated in a protest march at ESU, plaintiff received a letter on September 16, 2015 which directed that plaintiff retract his allegation that Rittgers was the most probable author of the racial slur, or face termination. The next day, according to plaintiff, Vietti met with "faculty, the media, boards of the [Black Student Union] and other student organizations, and later with their rank and file members." Id. at 15.  Plaintiff was not invited to the meetings and, plaintiff claims, thereafter communications ceased between the ESU community and plaintiff

and his wife.  Plaintiff claims that "ESU" offered incentives to "students and employees" to support ESU's "false story that no crime occurred."  Id.  Plaintiff further claims that ESU's false narratives led to hateful harassment and depictions of plaintiff over the internet.  Also, the student newspaper referred to plaintiff and his wife as "People Who Cry Wolf" and other editorials slammed plaintiff and his wife.  Id. at p. 16.

Plaintiff alleges that "ESU and the defendants" hoped that threatening plaintiff's job would induce him to retract his belief that Rittgers was the author of the racial slur and that his treatment was intended to have a chilling effect on future whistleblowers inclined to expose racism at ESU.  He further asserts that defendants Cordle, Vietti, Johnson, Anderson, Wyatt and Lauber "developed and extended a 'Cooling Off Period'" to prevent plaintiff from discussing discrimination.  Id. at p. 18.  Plaintiff also claims that during the cooling off period he was unable to create a portfolio for review of his research and service contributions and that this failure was used as a basis for his termination.

Finally, plaintiff contends that he was misquoted in a story by defendant Spoon in the ESU student newspaper and that defendant Cooley, the editor-in-chief, did not correct the error.  Although this is not made clear in the third amended complaint, from plaintiff's responses to the motions to dismiss

it appears that plaintiff is suing ESU students (defendants Spoon, Cooley, Wilson, Elijah, and Gilmore) for repeating what plaintiff alleges are false and defamatory statements, and for breaking off communications with plaintiff and his wife.

III. PLAINTIFF'S LEGAL CLAIMS

Plaintiff has listed the following legal claims in the third amended complaint: Count I – a violation of Title VII, 42 U.S.C. § 2000e, and the Kansas Act Against Discrimination (KAAD), K.S.A. 44-1001 et seq.; Count II – a violation of 42 U.S.C. §§ 1981 and 1983 for discrimination and retaliation; Count III – a violation of § 1983 for denial of due process; Count IV – a violation of § 1983 for an illegal conspiracy; Count V – a violation of the First Amendment[1]; and Count VI – a violation of state law against defamation and false light invasion of privacy. Plaintiff seeks compensatory damages, punitive damages and injunctive relief.

IV. DEFENDANTS' MOTIONS TO DISMISS (Doc. Nos. 41, 45 and 52).

Defendants have filed three motions to dismiss. The motions relate to different defendants. But, the arguments in each motion are mostly the same and plaintiff's responses to the motions are mostly the same. While there are some differences in the motions and responses, the court believes that it may be more efficient to discuss the motions to dismiss together.

---

[1] The court assumes the First Amendment claim is being brought pursuant to § 1983.

A. <u>Standards</u>

In this order the court shall apply the same standards to <u>pro se</u> pleadings and the motions to dismiss as the court has discussed in the previous orders ruling upon motions to dismiss in this case.  Doc. Nos. 12 and 19.  In addition, the court notes that where, as here, a plaintiff names several individuals and a state institution as defendants, "it is particularly important . . . that the complaint make clear exactly <u>who</u> is alleged to have done <u>what</u> to <u>whom</u>, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state."  <u>Robbins v. Okla. ex rel. Dep't of Human Servs.</u>, 519 F.3d 1242, 1250 (10th Cir. 2008)(emphasis in the original).

Also, in deciding a Rule 12(b)(6) motion, a court generally does not look beyond the confines of the complaint itself.  <u>Bell v. Fur Breeders Agricultural Co-op.</u>, 348 F.3d 1224, 1230 (10th Cir. 2003); see also <u>COF Training Services, Inc. v. TACS, Inc.</u>, 2007 WL 2264456 *1 (D.Kan. 8/3/2007).  In this case, the court has examined and considered the large amount of exhibits plaintiff has submitted in response to the motions to dismiss. But, the issues raised, aside perhaps from those related to administrative exhaustion, must still be decided on the basis of the allegations in the third amended complaint.

B. ESU has a valid Eleventh Amendment defense against plaintiff's state law and § 1983 claims.

ESU contends that the Eleventh Amendment bars ESU from being sued in federal court for a violation of the KAAD in Count I, of § 1983 in Count V, and for the state law claims in Count VI. In one of the court's previous orders upon a motion to dismiss (Doc. No. 19, pp. 7-11), the court stated that the Eleventh Amendment would apply against plaintiff's § 1983 and state law claims against ESU. This includes a claim under the KAAD. See Richardson-Longmire v. State Adjutant General, 1999 WL 156168 *7-8 (D.Kan. 3/8/1999) aff'd, 1999 WL 1032975 (10th Cir. 1999) cert. denied, 520 U.S. 1266 (2000); Ballou v. University of Kansas Medical Center, 871 F.Supp. 1384, 1391 (D.Kan. 1994). Plaintiff has not replied to the Eleventh Amendment argument in his response to ESU's motion to dismiss the third amended complaint. Therefore, the court shall dismiss without prejudice the claims against ESU under state law (including the KAAD) and § 1983.

The court extends the Eleventh Amendment defense to plaintiff's state law claims against individual defendants in their official capacities. A suit against an individual in his or her official capacity is a suit against the official's office and is no different from a suit against the state. See Hutto v. Finney, 437 U.S. 678, 699-700 (1978). The Eleventh Amendment

prohibits a party from bringing a supplemental state law claim against a state in federal court. Pennhurst State School & Hospital v. Halderman (Pennhurst II), 465 U.S. 89, 119-21 (1984). Therefore, plaintiff may not bring a KAAD claim or other state law claim against individual defendants in their official capacities in federal court. McCue v. State Dept. of Human Resources, 1995 WL 522896 *2 (D.Kan. 8/2/1995); Ballou, 871 F.Supp. at 1391; Schloesser v. Kansas Dept. of Health and Environment, 766 F.Supp. 984, 989 (D.Kan. 1991) rev'd on other grds, 991 F.2d 806 (10th Cir. 1993).

C. Plaintiff's Title VII and KAAD claims against individual defendants shall be dismissed.

Plaintiff has brought his claims under Title VII and KAAD in Count I against all sixteen individual defendants in their personal capacities. Defendants allege that these claims should be dismissed because plaintiff did not name the individual defendants in his administrative charges of discrimination. Also, defendants argue that they are not considered "employers" for the purposes of personal liability under Title VII or the KAAD. These arguments have merit. See Darroch v. American Implement, Inc., 2016 WL 107937 *2 (D.Kan. 1/8/2016); Hall v. United Parcel Service, 2000 WL 554091 *1-2 (D.Kan. 4/26/2000); see also Blackmon v. U.S.D. 259, 769 F.Supp.2d 1267, 1271-72 (D.Kan. 2011)(dismissing individual defendants who were not

named in charges of discrimination and who should not be considered "employers").

Plaintiff appears to concur with defendants' position in one of plaintiff's responses to the motions to dismiss. Doc. No. 49, p. 25. Upon review, the court shall dismiss plaintiff's Count I claims against the individual defendants in their personal capacities.

D. Plaintiff's § 1981 claims and equal protection claims under § 1983 shall be dismissed.

Defendants' next argument is that plaintiff's § 1981 and equal protection claims fail to state a claim. Plaintiff has not responded in any detail to this contention. Plaintiff only repeats his general claim that defendants have acted against him on the basis of his race.

1. Section 1981

The court agrees that plaintiff does not state a § 1981 claim against the defendants who are state actors. Any violation of plaintiff's constitutional rights or rights under § 1981 by state actors must be brought under § 1983. See Hannah v. Cowlishaw, 628 Fed.Appx. 629, 631-33 (10th Cir. 2016)(dismissing § 1981 claims concerning denial of tenure against university professors and administrators); Bolden v. City of Topeka, 441 F.3d 1129, 1136-37 (10th Cir. 2006)(damages claims against state actors for § 1981 violations must be

brought under § 1983).  As for the defendants whose actions toward plaintiff were not taken under color of state law, plaintiff has failed to allege specific facts, as opposed to broad conclusions, which plausibly demonstrate that a defendant acting as a private individual injured plaintiff's rights under § 1981.[2]  For instance, the defendants who acted in a private capacity are not alleged to have demoted plaintiff, changed his job responsibilities, or refused to renew his contract. Accordingly, the court shall dismiss plaintiff's claims under § 1981.

### 2. Equal protection under § 1983

Defendants also ask that plaintiff's equal protection claims under § 1983 be dismissed because plaintiff's allegations against the individual defendants fail to state claim.  The court agrees.  To allege an equal protection violation, plaintiff must state facts indicating that defendants, acting as government agents, injured plaintiff by treating him differently than other similarly situated individuals. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); Arabalo v. City of Denver, 625 Fed.Appx. 851, 868-69 (10th Cir. 2015). Plaintiff fails to allege non-conclusory facts describing how he

---

[2] These are the rights to: make and enforce contracts; to sue, be parties, and give evidence; to receive the full and equal benefit of the laws; and to be subjected to like pains and punishments.  See Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1267 (10th Cir. 1989).

was <u>injured</u> because of actions taken against him where he was treated differently from similarly situated individuals.

Plaintiff alleges two types of injuries:  1) job actions and 2) a defamatory statement.   According to plaintiff, the "defaming statement was that 'no crime occurred.'"  Doc. No. 43, pp. 2-3.  According to plaintiff, "This is the statement that impugns Dr. Hale's good name and reputation, which he believes was done in retaliation for his boldness as an African American speaking out against racism and racists acts at ESU."  <u>Id.</u> at p. 3.

Plaintiff alleges racial bias only in general terms, except as to defendants Alexander and Rittgers.[3]  Plaintiff also alleges that faculty and administration at ESU are almost entirely Caucasian, but this is not sufficient to plausibly demonstrate a racial animus.  See <u>Turner v. Public Service Co. of Colorado</u>, 563 F.3d 1136, 1147 (10th Cir. 2009)(statistical evidence – even that showing "prolonged and marked imbalance" - does not alone suggest that a female plaintiff experienced gender discrimination).

As to defendant Alexander, plaintiff does not allege facts which plausibly demonstrate that she personally participated in

---

[3]  As an example of generality, plaintiff alleges in the third amended complaint that "Defendants discriminated against Dr. Hale on the basis of his race and national origin."  Doc. No. 20, p. 23.

the job actions taken against plaintiff or that she participated
in producing or publishing the report that "no crime occurred."

As to defendant Rittgers, plaintiff does not allege facts
which plausibly demonstrate that she personally participated in
the job actions taken against plaintiff or that she produced or
published the report that "no crime occurred."

As to defendant Dow, plaintiff does not allege facts which
plausibly demonstrate that she acted on the basis of racial
bias, that she produced or published the report that "no crime
occurred" or that she personally participated in the job actions
taken against plaintiff.

As to defendants Cordle and Anderson, plaintiff does not
allege facts that plausibly demonstrate that they acted on the
basis of racial bias.

As to defendants Hoover, Brooks, Gilmore, Spoon, Cooley,
Elijah and Wilson, plaintiff does not allege facts which
plausibly demonstrate that they acted on the basis of racial
bias, that they produced or published the report that "no crime
occurred" or that they personally participated in the job
actions taken against plaintiff.

Finally, as to defendants Wyatt, Johnson, Lauber and
Vietti, plaintiff does not allege facts that plausibly
demonstrate that they acted on the basis of racial bias.

In conclusion, plaintiff has failed to allege non-conclusory facts describing how he was <u>injured</u> by actions where he was treated differently from similarly situated individuals. Plaintiff makes general allegations of race discrimination and discriminatory intent which are insufficient to plausibly demonstrate that actions were taken against him because of his race. And, where plaintiff makes more specific allegations of race discrimination (as those against defendants Alexander and Rittgers), he fails to link those defendants to specific injuries. Therefore, plaintiff has failed to allege an equal protection violation upon which relief may be granted.

E. <u>Plaintiff's due process claims shall be dismissed.</u>

Plaintiff asserts a denial of his due process rights in Count III of the third amended complaint. The complaint makes a conclusory reference to a property interest in a fair tenure review process and an expectation of continued employment. Doc. No. 20, p. 25. It also alleges that ESU lacked policies to ensure fair, logical and thorough investigations, and that ESU lacked policies, training and customs to prevent and/or mitigate racial discrimination. <u>Id.</u>

Defendants argue that plaintiff was an untenured professor with a one-year contract and did not have a property interest in continued employment at ESU. In response, plaintiff's asserts:

> Dr. Hale's claim for due process . . . is directed at the *flawed investigation* performed by ESU that resulted from his claims of a bias incident (hate crime) . . . .
> Dr. Hale is not suing for due process relating to a property interest or expectation in continued employment. Dr. Hale is suing the defendants because they all acted in concert to support the flawed investigation and its results, which was not conducted in a fair, thorough or logical manner whatsoever.

Doc. No. 43, pp. 5-6 (emphasis in the original).

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). So, if plaintiff, as he states, is not alleging a property interest in continued employment, he must allege a liberty interest deprivation to succeed upon a due process claim. But, as discussed in the court's last two orders, plaintiff's allegations in his prior complaints have fallen short of alleging a plausible claim that his liberty or property interests have been damaged. See Doc. No. 12 at pp. 5-10 and Doc. No. 19 at pp. 12-15. Plaintiff's third amended complaint does not materially change plaintiff's allegations in these respects. Therefore, the court shall dismiss plaintiff's due process claims in Count III.

F. Plaintiff's conspiracy claims in Count IV shall be dismissed.

In Count IV, plaintiff alleges that defendants violated § 1983 because they knew of alleged faults in the "official ESU 'investigation'", but "conspired to cover-up the facts of the alleged crime by providing false and fictitious information to the public and the media regarding the allegations made by Dr. Hale, depriving him of a fair, thorough and logical investigation."[4] Doc. No. 20, p. 26.

Defendants make two arguments to dismiss this claim. First, defendants contend that Count IV should be dismissed because plaintiff does not state a claim that defendant conspired to deprive plaintiff of a constitutional right. This argument is not directly challenged by plaintiff. The court believes it is meritorious. A plaintiff bringing a § 1983 claim must "allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." Bruner v. Baker, 506 F.3d 1021, 1025–26 (10th Cir. 2007) (internal quotation marks omitted). Plaintiff does not cite case law or other authority to support a claim that he has a right under the Constitution or federal law to a

---

[4] In Count IV, plaintiff does not allege a conspiracy to deprive him of his First Amendment rights or actions taken by specific defendants as part of such a conspiracy. So, the court shall consider plaintiff's First Amendment claim separately from Count IV.

"fair investigation" of the hate crime or bias incident under the circumstances of this case. The court agrees with defendants that the holding in <u>Doyle v. Oklahoma Bar Ass'n</u>, 998 F.2d 1559 (10th Cir. 1993) suggests that there is no such right. There, the court noted that process is not an end in itself and that the mere expectation of receiving due process does not itself create an independent liberty interest protected by the Constitution. <u>Id.</u> at 1570.

Defendants also contend that plaintiff failed to allege specific facts that plausibly demonstrate a conspiracy. This argument appears to have some merit, at least as to a number of the defendants. But, the court will not decide that point here since there are other grounds to dismiss Count IV.

G. <u>Plaintiff's First Amendment retaliation claims shall be dismissed as to defendant Alexander.</u>

In Count V, plaintiff alleges that he was illegally retaliated against for exercising his First Amendment rights. Plaintiff brings this claim against defendants ESU, Vietti, Cordle, Anderson, Alexander, Johnson, Lauber, Dow and Wyatt. He asserts that these defendants retaliated "against him for marching and speaking out against racial discrimination and a hate speech incident that went unaddressed." Doc. No. 20, p. 27.

Defendants' motions argue that Count V should be dismissed as to defendants Vietti, Cordle, Anderson, Alexander, Johnson, Lauber, Dow and Wyatt. First, defendants contend that plaintiff has not identified the statements plaintiff made for which he suffered retaliation. The court disagrees. The allegation quoted in the previous paragraph sufficiently describes plaintiff's protected activity. Defendants also claim that plaintiff has not alleged that they personally participated in the alleged retaliatory job actions.

The Tenth Circuit has reviewed the standards applied to a First Amendment retaliation claim in <u>Eaton v. Meneley</u>, 379 F.3d 949, 954 (10th Cir. 2004):

> For there to have been a violation of First Amendment rights, the defendant's action must have had a deterrent, or "chilling" effect on the plaintiff's speech. And when the plaintiff alleges that the defendant's action was taken in retaliation for protected speech, our standard for evaluating that chilling effect on speech is objective, rather than subjective. The harm must be of the type that would chill a person of ordinary firmness from continuing to engage in the protected speech.

(interior citations omitted).

Termination is the only retaliatory action which defendants' motions address. The court agrees with defendants that plaintiff's third amended complaint does not allege facts plausibly demonstrating that defendants Cordle, Anderson, Alexander, Johnson, Lauber, Dow and Wyatt acted to terminate

plaintiff's employment.  Plaintiff, however, also alleges that: "Provost Cordle and Defendants Vietti, Johnson, Anderson, Wyatt and Lauber developed and extended a 'Cooling Off Period' to deprive Dr. Hale from discussing Title VII discrimination, in direct violation of his First and Fourteenth Amendment rights." Doc. No. 20, p. 18.  It is unclear what is involved in the "cooling off period."  But, the court is unwilling to say at this stage upon an undeveloped record that it is implausible that the "cooling off period" would chill a person of ordinary firmness from engaging in protected speech.  Therefore, the court shall dismiss defendant Alexander from Count V, but not defendants Vietti, Cordle, Anderson, Johnson, Lauber, Dow and Wyatt.

    H.  <u>Plaintiff's defamation and false light claims shall be dismissed.</u>

    In Count VI plaintiff alleges defendants defamed plaintiff and cast him in a false light.  Specifically, plaintiff asserts that "[b]y claiming that no hate crime occurred and that there were no valid instances of racial discrimination in SLIM during the 2014-15 school year . . . ESU portrayed Dr. Hale as a liar and a fraud and the perpetrator of a hate hoax." Doc. No. 20, p. 28.  Plaintiff also alleges that "Defendants' flawed investigation impugned the name, integrity and reputation of Plaintiff Hale." <u>Id.</u>  Plaintiff alleges that each defendant is

liable for the wrongs described in Count VI.  Defendants contend that plaintiff's claims must be dismissed because plaintiff has failed to describe with specific statements of fact the remarks by defendants which mention plaintiff or impugn his name, reputation, or integrity.

"The elements of defamation include false and defamatory words, communicated to a third person, which result in harm to the reputation of the person defamed."  Hall v. Kansas Farm Bureau, 50 P.3d 495, 504 (Kan. 2002).  A false light privacy action is similar to defamation in most aspects.  Rinsley v. Brandt, 700 F.2d 1304, 1307 (10th Cir. 1983).  Neither defamation nor false light claims can be based upon statements which are opinions, as opposed to assertions of fact.  Id.  "A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion."  Restatement (Second) of Torts § 566 (1977).  The court's function is to determine whether an expression of opinion is capable of bearing a defamatory meaning.  Rinsley, 700 F.2d at 1309; Restatement (Second) of Torts § 566 at comment C.

The court agrees with defendants' argument.  To reiterate, plaintiff alleges that he has been defamed by statements that "no hate crime occurred."  Doc. No. 43, pp. 2-3.  For three

reasons, plaintiff's allegations do not plausibly demonstrate that these words defamed plaintiff or placed his name or reputation in a false light. First, the statement as alleged is not of and concerning plaintiff. It does not mention plaintiff. It does not refer to actions taken by plaintiff. It only contradicts a conclusion drawn and openly held by plaintiff. To be defamatory, a statement must be of and concerning the plaintiff. Restatement (Second) of Torts § 564 (1977). "The 'of and concerning' or specific reference requirements limits the right of action for injurious falsehood, granting it to those who are the direct object of criticism and denying it to those who merely complain of nonspecific statements that they believe cause them some hurt." Blatty v. New York Times Co., 232 Cal.Rptr. 542, 548 (Cal. 1986) cert. denied, 485 U.S. 934 (1988). "[T]he absence of the 'of and concerning' requirement 'could invite any number of vexatious lawsuits and seriously interfere with public discussion of issues, or groups, which are in the public eye.'" Id., quoting Michigan United Conservation Clubs v. CBS News, 485 F.Supp. 893, 900 (W.D.Mich.1980), aff'd, 665 F.2d 110 (6th Cir. 1981). Plaintiff does not allege facts plausibly demonstrating that the statement that "no hate crime occurred" was directly critical of plaintiff or "of and concerning" plaintiff.[5] The statement that "no hate crime

---

[5] The court assumes that plaintiff has sufficiently alleged that the

occurred" disagreed with a position taken by plaintiff, but it did not disparage plaintiff.   Therefore, plaintiff's defamation and false light claims should be dismissed for failure to state a claim upon which relief may be granted.

Second, but in a closely related vein, the alleged defamatory statement is not defamatory.   If this neutral, non-derogatory statement is considered a statement of fact, it does not impugn plaintiff's name, reputation or integrity.   The statement simply takes a position that is contrary to an opinion stated by (or statement of fact made by) plaintiff.   Plaintiff contends that the statement at least implies that plaintiff made an intentional false report of a hate crime.   The alleged defamatory statement may arguably place plaintiff's <u>account</u> of the "hate crime" in a false light.   But, this is not the same as disparaging plaintiff or placing plaintiff in a false light. Plaintiff does not allege facts plausibly showing that defendants, even by implication, accused him of making an <u>intentionally</u> false statement.

Finally, the alleged defamatory statement should be considered an opinion as opposed to a statement of fact. Plaintiff does not specifically allege facts which plausibly demonstrate that defendants, by stating "no hate crime

statements that "no hate crime occurred" were made in a context which acknowledged that plaintiff had voiced the opposite view and had insisted that his claim concerning a bias incident be investigated.

occurred," implied to a reasonable listener or reader that the underlying facts were manufactured by plaintiff or that plaintiff knew that his "hate crime" allegation was based upon a hoax.   Plaintiff makes the broad and conclusory claim in the third amended complaint that this was how plaintiff was portrayed by defendants' statements – Doc. No. 20, ¶ 219 – but plaintiff does not allege facts to support the claim.   Rather, it appears from plaintiff's allegations that the conflict as to whether "no hate crime occurred" is based around a legal interpretation of facts.   See Doc. No. 20 at ¶¶ 87, 88, 90, 102, 103, 104, 105, 106, 107.   As such, the statement "no hate crime occurred" represents a legal opinion as opposed to a statement of fact.   Because it is an opinion which clashes with plaintiff's opinion regarding a similar set of facts (and does not imply an unspoken underlying defamatory fact), it should not be considered defamatory.[6]

I.  Defendants' "qualified immunity" argument is denied in part.

Defendants argue that plaintiff has not given defendants fair notice of the claims he is making against them

---

[6] Whether or not defendant Rittgers wrote the racial slur (an area of disagreement between plaintiff and defendants) does not change whether the statement – "no hate crime occurred" – is a legal opinion.   The court further believes that defendant Vietti's alleged statement that ESU "is not hiding behind the legal definition of a hate crime" (Doc. No. 20, ¶ 89), does not imply that defendants were claiming a hoax by plaintiff.   Rather, it appears from plaintiff's submissions that Vietti was stating that ESU was not defending its actions or the racial atmosphere on campus upon technical legal grounds. This was not a defamatory statement.

individually, at least as to plaintiff's claims under § 1983. Defendants label this argument as a "qualified immunity" argument, but it appears to relate more closely to plaintiff's burden under FED.R.CIV.P. 8 and the <u>Twombly</u> decision to give fair notice of plaintiff's claims to the defendants. The court is sympathetic to this argument and has considered it in analyzing plaintiff's § 1983 claims in this decision. To the extent that plaintiff's § 1983 claims have survived after this opinion, the court denies defendants' argument. The denial of defendants' argument is made without prejudice to defendants' raising a qualified immunity defense later in this litigation.

J. <u>Defendants' arguments against plaintiff's claims for injunctive relief are denied without prejudice.</u>

Defendants contend that plaintiff's wide-ranging claims for injunctive relief should be dismissed for multiple reasons. Many of defendants' arguments are rendered moot because of the court's prior holdings in this order. The court shall deny without prejudice those arguments which are not moot. Those arguments may be better made and considered after the parties have adjusted to the claims remaining after this order.

K. <u>Plaintiff has not made proper service of process upon Judy Anderson</u>

Defendant Anderson claims that she should be dismissed because plaintiff has not properly effected service of process. FED.R.CIV.P. 4(e) requires that service of process upon an

individual follow state law in the state of this judicial district or follow the provisions of subpart (e)(2). Kansas law requires that plaintiff first attempt to serve an individual or agent authorized to receive service of process, or use return receipt delivery to an individual at the individual's dwelling or usual place of abode. K.S.A. 60-304(a). Service by return receipt delivery to the individual's business address is only proper if a return of service is filed stating that such delivery was refused or unclaimed at the individual's home or usual place of abode. Id. The provisions of Rule 4(e)(2) also provide for service upon the individual, leaving a copy at the individual's dwelling or usual place of abode, or delivering a copy to an agent authorized to receive service of process.

Plaintiff, in response, does not allege that he achieved service of process through means which comply with Kansas law or Rule 4(e)(2). He claims that he made two unsuccessful efforts at personal service at defendant Anderson's office and then sent service to defendant Anderson by return receipt delivery to Anderson's office. The return receipt was not signed by Anderson.

As defendant argues, plaintiff's efforts do not comply or even substantially comply with the above-recited legal requirements. See Wanjiku v. Johnson County, 2016 WL 1255621 *6-9 (D.Kan. 3/29/2016). Plaintiff shall be granted 40

28

additional days from the date of this order to make proper service of process upon defendant Anderson.

L. Summary

In conclusion, consistent with the terms of this memorandum and order, plaintiff will be permitted to proceed upon his Title VII claims against defendant ESU and his § 1983 First Amendment retaliation claims against defendants Vietti, Cordle, Anderson, Johnson, Lauber, Dow and Wyatt.  Otherwise, plaintiff's claims are dismissed.  Defendant Anderson shall also be dismissed unless plaintiff makes proper service of process upon her within 40 days of the date of this order.

V.  PLAINTIFF'S  MOTION  TO  DISMISS  DEFENDANT  RITTGER'S COUNTERCLAIM SHALL BE GRANTED.

Defendant Debra Rittgers has filed a counterclaim against plaintiff alleging defamation.  Doc. No. 33.  This document is not part of an answer to the third amended complaint.

Plaintiff has filed a motion to dismiss the counterclaim for failure to state a claim, pursuant to Rule 12(b)(6).  Doc. No. 35.  One of plaintiff's arguments raises a procedural issue as opposed to asserting that the counterclaim fails to state a claim for relief.  Plaintiff contends that the counterclaim is deficient because it was not contained in an answer filed by defendant Rittgers to the third amended complaint.  The court agrees.  FED.R.CIV.P. 13(a) provides that counterclaims are to

be asserted in "a pleading." A "pleading" is confined in FED.R.CIV.P. 7(a) to complaints, answers, and replies to an answer. Therefore, defendant Rittgers' counterclaim should have been asserted in an answer to the third amended complaint, not in a separate document filed before the answer. See W&W Steel, LLC v. BSC Steel, Inc., 2012 WL 1828928 *3 (D.Kan. 5/18/2012); Allied Medical Associates v. State Farm Mut. Auto. Ins. Co., 2009 WL 839063 *1-2 (E.D.Pa. 3/26/2009); RLJCS Enterprises, Inc. v. Professional Ben. Trust, Inc., 2004 WL 2033067 *2 n.4 (N.D.Ill. 9/2/2004).

Accordingly, the court directs that defendant Rittgers' counterclaim be dismissed without prejudice. The court will not reach the other arguments made by plaintiff in the motion to dismiss.

VI. CONCLUSION

Plaintiff may proceed upon his Title VII claims against defendant ESU. Plaintiff may also proceed upon his § 1983 First Amendment retaliation claims against defendants Vietti, Cordle, Anderson, Johnson, Lauber, Dow and Wyatt. Otherwise, plaintiff's claims are dismissed and defendants Hoover, Rittgers, Alexander, Brooks, Spoon, Cooley, Wilson, Elijah and Gilmore are dismissed. Defendant Anderson shall also be dismissed unless plaintiff makes proper service of process upon her within 40 days of the date of this order. Consistent with

these directives, the motions to dismiss at Doc. Nos. 41 and 45 are granted in part and denied in part.  The motion to dismiss at Doc. No. 52 is granted.  Also, the motion to dismiss the counterclaim (Doc. No. 35) is granted and the counterclaim shall be dismissed without prejudice.  Finally, because plaintiff has filed a third amended complaint, the motion to dismiss the second amended complaint (Doc. No. 15) is considered moot.

**IT IS SO ORDERED.**

Dated this 15th day of June, 2016, at Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge